IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 09-cv-02197-RPM
(Consolidated with 10-cv-00629-RPM)

NATHAN ACKS,
TIFFANY BRAY,
CHASE GOLL,
ELI HARDY,
AMINAH MASUD,
IAN MORRISON,
BLACK PENDERGRASS,
KIM SIDWELL, and
JACOB STERNBERG,

      Plaintiffs,
v.

CITY AND COUNTY OF DENVER,
DEBORAH DILLEY, a Commander with the Denver Police Department, in her individual capacity;
ANTHONY FOSTER, a Sergeant with the Denver Police Department, in his individual capacity; and
WILLIAM LOVINGIER, Undersheriff, in his individual capacity;

      Defendants.

---

ORDER DENYING MOTION FOR SUMMARY JUDGMENT ON FIRST AND SECOND CLAIMS FOR RELIEF

---

The plaintiffs in these consolidated civil actions were among 92 people arrested by Denver police officers on the evening of August 25, 2008, when Denver was hosting the Democratic National Convention ("DNC").  All those arrested were charged with violating Denver Municipal Ordinance 38-86 making it unlawful for any person knowingly

to obstruct a street.[1] They were taken to a temporary arrest processing site and held there for several hours before being released on bond. The charges against plaintiffs Chase Goll, Ian Morrison, and Blake Pendergrass were dismissed. Jacob Sternberg was acquitted after a bench trial and the other plaintiffs were acquitted by juries.

In these civil actions the plaintiffs claim violations of the Fourth Amendment in the First Claim for Relief and the First Amendment in the Second Claim for Relief, those amendments made applicable by the Fourteenth Amendment. The plaintiffs seek damages pursuant to 42 U.S.C. § 1983.

Following discovery, the defendants on these claims moved for summary judgment of dismissal, contending that the arrests were based on probable cause to believe that the 92 persons arrested violated the ordinance in the presence of police officers.

The individual defendants, Commander Deborah Dilley and Sergeant Anthony Foster, claim qualified immunity from any constitutional violation based on their belief that their conduct was not contrary to clearly established law of which they should have been aware as reasonably competent police officers.

---

[1] The relevant portions of the ordinance are:

(1) It shall be unlawful for any person to knowingly:

    (a) Obstruct a highway, street, sidewalk, railway, waterway, building entrance, elevator, aisle, stairway, or hallway to which the public or a substantial group of the public has access or any other place used for the passage of persons, vehicles, or conveyances, whether the obstruction arises from the person's acts alone or from the person's acts and the acts of others; or

\*\*\*

(2) For purposes of this section, "obstruct" means to render impassable or to render passage unreasonably inconvenient or hazardous.

Because there are some disputes of material fact, the proposed evidence presented by the parties must be considered favorably to the plaintiffs, without making any determinations as to the credibility of the witnesses.  Applying that view, there is evidence to support the following statement of facts.

The Denver Police Department ("DPD") had done extensive planning for the DNC.  There was extensive training for crowd control and an empty building on York Street was rented for use as a processing site in the expectation of large group arrests.  Civic Center Park was designated as a public forum for concerts, speeches and demonstrations.  It is an area between the State Capitol and the City and County Building near the downtown business area of the City.

Posters gave advance public notice that a group self-identified as "anarchists" would stage a protest at the Park beginning about 6:00 p.m. on Monday, August 25, 2008.  The stated goal of the group was to disrupt the DNC.  In anticipation of possible trouble, DPD officers were stationed in the vicinity.  Sergeant Foster was the leader of one of the Rapid Response Team officers deployed in the area.  Commander Dilley was the command officer for these teams.

Nathan Acks was present as a volunteer legal observer for the People's Law Project; Chase Goll, an art student, was there to take photographs for a class project, accompanied by Eli Hardy; Kim Sidwell was also taking photographs; Ian Morrison was videotaping a documentary film.  The other plaintiffs were spectators.  None of the plaintiffs was among the demonstrating group.

The demonstration began in the Park at about 7:00 p.m.

A crowd estimated at between 200 to 300 people walked into 15th Street moving toward the downtown area. This was not an organized march. Some people were in the street and some walked on sidewalks.

When Commander Dilley learned of this crowd movement, she gave an order, by radio, to form a police line at Court Place to block the crowd on 15th Street, preventing entry into downtown. Sgt. Foster formed that line. Commander Dilley then ordered a second line of officers to block 15th Street at Cleveland Place.

All of the plaintiffs were among the people who were closed in between these police lines. The Sheraton Hotel, housing DNC delegates, is adjacent on the Northeast side of 15th Street and the Wellington Webb Building, housing City offices is on the Southwest side. While there were people both in the street and on the sidewalks when Commander Dilley arrived, she observed two clusters of people, one near each of these two buildings. She asked Sgt. Foster if he could identify those who had been in the street.

She and Sgt. Foster differ in their respective recollections of this conversation. Commander Dilley said that Sgt. Foster was certain that those near the hotel had been in the street. Sgt. Foster said that he identified those who were then in the street, near the hotel. Commander Dilley ordered the arrest of all in the group near the hotel, both those then in the street and those on the sidewalk. Those near the Webb Building were released.

Each of the 92 persons arrested was given a "ticket" for obstructing traffic and for failing to comply with an order to disperse. There was no amplification of an order to

disperse.  That violation was not formally charged.

The Fourth Amendment protects individual liberty.  The Supreme Court has made it clear that "a search or seizure of a person must be supported by probable cause particularized with respect to that person."  *Ybana v. Illinois,* 444 U.S. 85, 91 (1979).  *See also Maryland v. Pringle*, 540 U.S. 366 (2003) and *Fogarty v. Gallegos,* 523 F.3d 1147, 1158 (10th Cir. 2008) ("probable cause to arrest Fogarty as an individual, not as a member of a large basket containing a few bad eggs.")

It is not enough that a person be in a public street to violate Denver's ordinance.  He must be shown to have <u>knowingly</u> obstructed passage.  At best, it could be said that Commander Dilley understood Sgt. Foster to say that all of the 92 persons arrested had been in the street at some time before her arrival.  Obviously, she did not observe any of them obstructing 15th Street because the block had been cordoned off before she got there.

It is implausible to believe that Sgt. Foster could have identified all of the individual plaintiffs as having participated in a group obstruction of 15th Street before the police line blockaded it at Court Place.  Whether the defendants can prove that any of the plaintiffs was actually in the street knowingly obstructing traffic is a factual issue for trial.  It cannot be said that any trained police officer in Sgt. Foster's position could reasonably believe that all of the 92 people standing near the Sheraton Hotel, with the street blocked off, were knowingly obstructing traffic on 15th Street at an earlier time.  This mass arrest could not be said to have been based on probable cause that each person present near the Sheraton Hotel had violated the law in an officer's presence.

Accordingly, there can be no ruling that undisputed facts show probable cause to support the warrantless arrest of these plaintiffs.

Whether the individual defendants are entitled to qualified immunity based on the belief that the mass arrest was supported by probable cause must be determined by the objective standard of a reasonable police officer in their respective positions.  Their good faith belief is not determinative.  Because there are factual questions concerning Sgt. Foster's observations and his communications with Commander Dilley, it is not possible to rule on this question on the present record.

The plaintiffs' claim of a First Amendment violation is not separable from that brought under the Fourth Amendment.  They are not contending that they were participants in a peaceful protest march.  Some of them claim press privilege and assert that they had a protected interest in observing and recording police conduct.  While there are substantial questions as to the viability of a First Amendment claim in this case, prudence dictates reservation of a ruling until trial of the plaintiffs' evidence.

It has been agreed that Commander Dilley was the City's final decision maker for the arrest of the plaintiffs and that her action was ratified up to the level of Manager of Safety.  Accordingly, if constitutional violations are proven, the City and County of Denver has liability for them.

Upon the foregoing, it is

ORDERED that the defendants' motion for summary judgment is denied.

Dated:   May 9th, 2011

                              BY THE COURT:

                              s/Richard P. Matsch
                              _____
                              Richard P. Matsch, Senior District Judge